COMUNIDAD AGRÍCOLA BIANCHI, Petitioner, *v.* PUERTO RICO LABOR RELATIONS BOARD, ETC., Respondent.

No. JRT-64-7.     Decided June 30, 1965.

*Sifre & Ruiz-Suria* and *Baltasar Corrada del Río* for petitioner.
*J. B. Fernández Badillo, Solicitor General,* and *José Orlando Grau* and *Luis M. Rivera* for respondent.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Santana Becerra, and Mr. Justice Dávila.

PER CURIAM: Unión de Trabajadores Agrícolas of Barrio Palmar in Aguadilla, affiliated to the Free Federation of Labor of Puerto Rico signed a collective agreement covering the workers employed by the employer-petitioner—Comunidad Agrícola Bianchi—on April 3, 1961. By virtue of that contract the employer bound itself to contribute five cents for each ton of cane cut and ground to a Welfare Fund to be *administered* by the Union *for the benefit of the workers covered by the agreement.* The employer bound itself also to pay two cents per ton of cane cut and ground to the Free Federation, to which the contracting Union was affiliated. These payments were to be made at the end of each grinding season. The Welfare Fund was to be *administered* by a special committee of the Union and its administrators had to be bonded. This agreement was to be in effect until December 31, 1963.

Pursuant to an order of September 25 of 1962 of the Labor Relations Board, elections were held on February 9, 1963 and the workers chose the Sindicato de Trabajadores (Packinghouse AFL-CIO) to represent them at collective bargaining talks and other pertinent matters. This selection was certified by the Board on March 6, 1963.

On June 3, 1963 the Employer represented by the Sugar Growers Association signed a collective agreement with the Sindicato (Packinghouse) covering its employees and it was

agreed to create a *Welfare and Retirement Fund* to which the Employer was to contribute 5½ cents for each ton of cane cut and ground. The Board of Directors of the Union was to administer the *Fund* under regulation adopted and to submit reports to the Employer on the manner in which its contributions were used. A Life Insurance Fund for the workers was also created to provide an insurance for Employer's workers up to a limit set by the amounts contributed by the Employer as determined by the Union's Board of Directors after the proper studies were made; to this Fund the Employer contributed 3 cents for each ton of cane cut and ground. The Life Insurance Fund was *administered* by the Union under regulation adopted and had to report to the Employer about its operation and use so that its contribution be used to the utmost for the benefit of the workers. Both the 5½ cents for the Welfare Fund and the 3 cents for Life Insurance must be delivered to the Sindicato by the Employer within the 30 days following the termination of the grinding season. It was expressly agreed that the provisions of the agreement of June 3, 1963 were to become effective that date and until December 31, 1965. "But immediately following, the contract makes clear that regarding wages, Welfare and Retirement Fund and Classifications it shall be retroactive to January 1, 1963."[1]

The Employer did not deliver either the 5½ cents for the Fund or the 3 cents for the Insurance within the 30 days following the 1963 grinding season. It argued that as the Free Federation claimed those contributions for the period in which it represented the Employer's workers, until March 6, 1963, and the Sindicato (Packinghouse) also claimed them during the grinding season, it did not know for sure who was entitled to them. The Employer then resorted to judicial deposit or action so that the Unión de Trabajadores Agrícolas

---

[1] Direct quotation from the Official Examiner's Conclusions and Report.

(FLT) and the Sindicato (Packinghouse) should litigate their respective claims. The Employer ground 122,321 tons of sugar cane in the 1963 season, which yields the amount of $10,397.28 representing the 5½ cents for the Welfare and Retirement Fund and 3 cents for Life Insurance. That amount was deposited in the judicial action already mentioned which was filed August 26, 1963 as case No. 63-3378 in the Superior Court, San Juan Part.

On October 1, 1963 the Sindicato charged the Employer with unfair practice for not having paid the amounts. After the proper proceedings the Board issued a Decision and Order on July 1, 1964, compelling the Employer to comply with the Official Examiner's decision and the latter decreed that the employer shall remit to the Retirement and to the Insurance Funds administered by the Sindicato (AFL-CIO) 5½ and 3 cents, respectively, for each ton of cane ground during the 1963 grinding season.

The Employer has challenged the foregoing Decision and Order in this Court. There are several questions involved, the Board's and the Superior Court's jurisdiction on the matter, among them, as well as the faculty of the Board to consider a controversy of a proprietary nature between two Unions, as alleged.

If the Employer did not comply with its collective agreement with the Sindicato the exclusive jurisdiction of the Labor Relations Board to deal in this matter as an unfair practice is beyond any doubt, and such jurisdiction cannot be curtailed or suspended by the fact that the matter has been taken to court. If legal jurisdiction has been acquired the Board exercises it fully, including the affirmative actions which it must issue as a result of its decisions.

Concerning the contributions to the Welfare and Retirement Fund, it is clear that the Employer violated the provisions of the contract by failing to deliver said contribu-

tions to the Sindicato within the 30 days following the end of the grinding season. The Employer would have met its contractual obligation by delivering the money to the Sindicato, not by depositing it judicially to make the Sindicato litigate it with a third party. We realize the uncertainty harbored by the Employer but the Union (FLT) was not a contracting third party in the agreement with the Sindicato, in which case the Employer would have had no other alternative but that of the judicial deposit because both claimants derived their rights from a common source, the agreement.

Regarding that Fund, the affirmative action of the Board shall be enforced. If we consider that whether under representation by the Union (FLT) or under that of the Sindicato the beneficiary in the Fund is the same, and that either Union only had and has the *administration* of the Fund, we do not believe that the Employer should be required in the long run to pay twice for the same purpose because that Fund was not a separate property of either one or the other representative. If the Union (FLT) already lost its administration and the Sindicato has it at the time the Order went into effect, it is logical and acceptable that the Sindicato receive the funds for the whole grinding season or since January 1, 1963. This likewise binds the Sindicato to take care, as administrator, of the workers' claims against the Fund for the whole season or as of January 1, although it had taken over their representation in March.

Regarding the 3-cent contribution to the Life Insurance Fund, the record does not show that the obligation was binding on the Employer retroactively to January 1, 1963. See the aforecited Examiner's conclusions. In that case the Employer's obligation to contribute to this Fund started as of June 3, and not January 1. The foregoing does not in any way prejudge the right of the Free Federation of Labor to require from the Employer the 2 cents per ton of ground cane the latter bound itself to contribute as property of said

Federation under the agreement of April 3, 1961 and while said agreement was in force.

The Decision and Order of the Board shall be modified in the sense stated so as to eliminate therefrom the Employer's duty to contribute to the Sindicato for the Life Insurance Fund for the period prior to June 3, 1963, and as modified it will be enforced by this Court.